Filed 3/11/14  P. v. Hernandez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ARMANDO HERNANDEZ, JR.,<br><br>　　　Defendant and Appellant. | E057749<br><br>(Super.Ct.No. FSB1203745)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Kyle S. Brodie, Judge.  Affirmed.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Regland and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Armando Hernandez, Jr., was charged with street terrorism (Pen. Code, § 186.22, subd. (a), count 1), possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a), count 2), and carrying a loaded firearm while being an active participant in a street gang (Pen. Code, § 25850, subds. (a) & (c)(3), count 3).[1] He moved to suppress the prosecution's evidence against him pursuant to Penal Code section 1538.5. The trial court denied the motion. Defendant then pled guilty to count 1 as a misdemeanor and counts 2 and 3 as felonies. The court granted him probation for a period of 36 months, on specified terms and conditions.

On appeal, defendant contends that the trial court erred in denying his motion to suppress. He also argues that the probation condition imposing a curfew is invalid. We affirm.

FACTUAL BACKGROUND

The following factual background is derived from the hearing on the motion to suppress: On August 19, 2012, an armed robbery took place in the area of the 1300 block of West Spruce Street in San Bernardino. Officer Jerardo Orozco spoke with the victim, who described the suspect as a Hispanic adult male, about six feet tall, approximately 180 pounds, thin build, medium complexion, brown eyes, and short, black hair. The suspect also had a tattoo on the right side of his neck. Officer Orozco issued an all points bulletin (APB) for the robbery suspect and posted it in his department. Officer Orozco testified at

_____

[1] All further statutory references will be to the Penal Code, unless otherwise noted.

2

the suppression hearing and said there was limited space on the APB form, so he may have left a couple of items out of the suspect description. He believed he left out the fact that the suspect was missing two front teeth, since there was no box on the APB form to check regarding a description of teeth. Officer Orozco testified that the victim told him he struck the suspect with a metal tube, but there was no apparent injury. The victim also said he pepper sprayed the suspect's face.

Officer Paul Spriggs testified at the hearing on the motion as well. He said he became aware of the APB on August 20, 2012, during a briefing. The information that he recalled being in the APB included that the robbery suspect was a Hispanic male adult, six feet tall, approximately 180 pounds, thin build, medium complexion, about 40 years old, dark hair, dark eyes, and that he had a tattoo on the right side of his neck. Officer Spriggs was informed that the robbery occurred in the 1300 block of West Spruce Street in San Bernardino, and that the suspect used a black semiautomatic handgun during the robbery. On August 21, 2012, Officer Spriggs was patrolling an area that was one block south of the 1300 block of West Spruce Street. He had a heightened sense of awareness, since he was near the location that the robbery had taken place. At that time, he observed a Hispanic male, who had short, dark hair. The male was approximately six feet tall, had a thin build, medium complexion, and a large tattoo on the right side of his neck. Officer Spriggs turned his police car around, parked, got out of the car, and approached him from behind. The person Officer Spriggs observed was later identified as defendant. Officer Spriggs could not recall if he asked defendant to stop, or if defendant stopped on his own.

3

Officer Spriggs told defendant the reason he was contacting him was because there was a robbery that had occurred in the area, and he matched the description of the suspect. Officer Spriggs said he wanted to speak to him to see if he was involved or not. Defendant said he understood why he was being contacted. When asked if he had anything illegal on his person, defendant said he had marijuana in his pocket. Then Officer Spriggs asked defendant to place his hands on his head, and defendant complied. Officer Spriggs never told defendant that he was not free to leave. The officer reached into defendant's pocket to retrieve the marijuana and felt the handle of a handgun. He then told defendant to put his hands behind his back, and he handcuffed him. Officer Spriggs found a black revolver and marijuana in defendant's pocket, as well as methamphetamine in his sock.

On cross-examination, Officer Spriggs testified that defendant had a tattoo on his face and on the left and right sides of his neck; however, he confirmed that he did not receive any information that the robbery suspect had tattoos on both sides of his neck. He then explained that when people have a gun pointed at their face, they sometimes do not remember every specific detail about a suspect. He stated that just because a victim says a suspect has a tattoo on the right side of his neck, it does not mean that the suspect could not also have tattoos on his face and the left side of his neck.

ANALYSIS

I. The Trial Court Properly Denied the Motion to Suppress

Defendant argues that the trial court erred in denying his motion to suppress the evidence of the marijuana, methamphetamine, and revolver. He contends that the encounter between him and Officer Spriggs was not consensual, and that he was unlawfully detained. He further argues that the court should have suppressed his statement that he possessed marijuana, since it was made during an illegal detention. We disagree.

A. *Relevant Background*

The court held a hearing on the suppression motion and heard testimony from Officers Orozco and Spriggs. Defense counsel argued that Officer Spriggs detained defendant based on "very vague details that, in fact, [were] very inaccurate." Defense counsel asked the court to take judicial notice of defendant's pale complexion, but the court said that it was not a witness. Defense counsel then argued that, based on age alone, the suspect described in the robbery could not be defendant. The prosecutor responded that the encounter was consensual and that once defendant admitted he had something illegal on him, Officer Spriggs had reasonable suspicion and/or probable cause to pat him down. The prosecutor also argued that, even if the encounter was not consensual, the officer had reasonable suspicion to detain defendant, since he matched the description in the APB, and he was only one block away from where the robbery took place.

The court found that there were substantial similarities between the suspect described in the APB and defendant, including race, height, weight, build, tattoo on the right side of the neck, and short, black hair.  Noting that proof beyond a reasonable doubt was not the standard, the court found that there was sufficient evidence for the officer to approach defendant and speak to him.  The court accordingly denied the motion to suppress.

B.  *Standard of Review*

In reviewing the denial of a motion to suppress evidence, "we defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.  [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

C.  *The Detention Was Reasonable*

At the outset, we note that the trial court did not make a determination about whether or not the encounter between defendant and Officer Spriggs was consensual. Instead, the court just found that the officer detained defendant, and that the detention was based on substantial similarities between the description of the suspect in the APB and defendant.  Assuming arguendo that the encounter was not consensual, we agree with the trial court that the detention was lawful.

"The legal basis upon which a peace officer may detain a citizen has been explained as follows:  '[I]n order to justify an investigative stop or detention the

circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity.' [Citation.]" (*People v. Walker* (2012) 210 Cal.App.4th 1372, 1381-1382 (*Walker*).) In other words, "[a] detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 (*Souza*).)

The primary circumstance at issue here is whether defendant's alleged resemblance to the robbery suspect, as described in the APB, provided Officer Spriggs with a reasonable suspicion to detain defendant. We conclude that it did.

The description of the robbery suspect that Officer Spriggs received indicated the suspect was a Hispanic male adult, approximately six feet tall, about 180 pounds, thin build, medium complexion, around 40 years old, dark hair, dark eyes, and that he had a tattoo on the right side of his neck. Spriggs was also informed that the robbery occurred in the 1300 block of West Spruce Street in San Bernardino, and that the suspect used a black semiautomatic handgun during the robbery. Two days after the robbery occurred, Officer Spriggs was on patrol and saw defendant, who he believed fit the description. Defendant was a Hispanic male with short, dark hair. He was approximately six feet tall, had a thin build, medium complexion, and he had a large tattoo on the right side of his

7

neck. Moreover, defendant was observed in the same vicinity where the robbery occurred. Considering the totality of the circumstances, Officer Spriggs had reasonable suspicion to detain defendant and investigate whether he may have been involved in the robbery.

Defendant argues that there were significant differences between him and the robbery suspect. He cites *People v. Walker*, *supra*, 210 Cal.App.4th 1372[2], in support of his position. *Walker* is distinguishable. In that case, the appellate court reversed the trial court's finding that a police officer had reasonable suspicion to detain the defendant. A police officer was briefed by his supervisor about a sexual battery that had occurred and was shown photographs of two suspects that were attached to an e-mail from another police detective. (*Id*. at pp. 1377-1378.) The officer subsequently observed the defendant aboard a train and noticed that he resembled one of the suspects in the photographs in "'[h]eight, weight, age, hairline from the photographs and the shape of his nose.'" (*Id*. at p. 1378.) The appellate court found that there was "some commonality" between the defendant and one of the suspects, namely that they were of the same race, and their age and weight were in the same general range. (*Id*. at p. 1386.) However, there were also "significant differences." (*Ibid*.) The suspect was six feet one inches tall, while the defendant was five feet 10 inches tall. (*Ibid*.) The suspect was described as

---

[2] We note that defendant actually cites *People v. Walker* (2010) 210 Cal.App.4th 165, in his opening brief. However, that opinion was modified and reprinted at *People v. Walker* (2012) 210 Cal.App.4th 1372. Thus, we refer to the proper latter cite in this opinion.

"'clean shaven, light complected, [and] appeared unkempt,'" while the defendant had a medium to dark complexion, was well-groomed, and had a mustache and goatee. (*Ibid*.) Moreover, the officer said he relied on the photographs attached to the email. (*Ibid*.) However, the appellate court found that the photographs were of poor quality and provided "such poor depictions of the suspects' faces that their noses [were] not . . . discernible." (*Id*. at p. 1387.) The appellate court found that the defendant did not match the physical descriptions or photographs of the suspects and, thus, the only attributes connecting the defendant to the crime were his race and age. (*Id*. at p. 1388.) The court concluded that the detainment was unlawful since the officer relied on the "vague or general descriptions" of race and age. (*Ibid*.) The court further noted that the fact that the defendant was located at the train station where the sexual battery occurred was inconsequential, since one week had passed since the crime occurred. (*Id*. at p. 1389.)

Here, unlike *Walker*, Officer Spriggs did not just rely on defendant's race and age. As discussed *ante*, there were substantial similarities between defendant and the description of the robbery suspect. Defendant points out that he did not match the age description of the robbery suspect.[3] He also points out that he had a tattoo on his face and *both* sides of his neck. However, as Officer Spriggs testified, crime victims often do not remember every specific detail about a suspect. The victim in this case reported that

---

[3] At the suppression hearing, Officer Spriggs testified that the APB included the information that the suspect was approximately 40 years old. He was questioned about how old defendant looked, and Officer Spriggs opined that defendant could be anywhere from 20 to 30 years old. Defendant was actually 23 years old.

9

the suspect had a tattoo on the right side of his neck.  Officer Spriggs testified that just because a victim described a suspect as only having a tattoo on the right side of his neck did not mean that the suspect could not have had tattoos on his face or the left side of the neck, as well.  Ultimately, defendant matched most of the characteristics listed in the APB.  We further note that Officer Spriggs located defendant in the vicinity where the robbery had occurred and, unlike *Walker*, only two days had passed since the robbery.

In a related argument, defendant argues that Officer Orozco, the officer who issued the APB, would not have had a reasonable suspicion to detain him since he knew the robbery suspect was twice defendant's age, he knew the suspect was missing two front teeth, and he "knew that the description of the robbery suspect did not include a facial tattoo."  Defendant cites the following quote from *United States v. Hensley* (1985) 469 U.S. 221 (*Hensley*), in support of his position:  "Assuming the police make a *Terry* stop in objective reliance on a flyer or bulletin, we hold that the evidence uncovered in the course of the stop is admissible if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop, [citation], and if the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department." (*Id*. at p. 233.)  *Hensley* is completely inapposite.  In that case, one police department issued a "'wanted flyer'" based on information obtained from an informant that the defendant was involved in a robbery.  (*Id*. at p. 223.)  The issue in *Hensley* was whether officers in a neighboring city could rely on that flyer to justify a detention of the defendant.  (*Id*. at p. 229.)  The Supreme Court concluded that "if a flyer or bulletin has

been issued on the basis of articulable facts supporting a reasonable suspicion that *the wanted person* has committed an offense, then reliance on that flyer or bulletin justifies a stop . . . ." (*Id*. at p. 232, italics added.)

Relying on *Hensley*, defendant argues that Officer Spriggs' detention was unreasonable because Officer Orozco, the officer who issued the APB, did not have a reasonable suspicion to detain defendant. However, *Hensley* involved a "wanted" flyer that named a *specific person* that the police were looking for. The Supreme Court's holding in *Hensley* has no application here since the instant case involved an APB with a description of a suspect, which Officer Orozco wrote based on his interview of the robbery victim. Contrary to defendant's claim, there was no requirement that Officer Orozco have reasonable suspicion in order for Officer Spriggs to detain him. Only the detaining officer was required to have reasonable suspicion to justify the detention. (See *Souza*, *supra*, 9 Cal.4th at p. 231.)

Defendant further claims that the trial court should have suppressed his statement that he possessed marijuana, since it was made during an illegal detention. However, in light of our conclusion that the detention was lawful, we reject this claim.

In sum, the trial court properly denied defendant's motion to suppress evidence.

## II. The Probation Term Imposing a Nighttime Curfew Is Valid

Probation condition No. 25 states: "Be inside your place of residence every evening by 11:00 p.m. and not leave said residence before 6:00 a.m., unless there is a verifiable family emergency or you are traveling to or from a place of employment or

11

school."  Defendant contends that this probation term is invalid since it is not related to his crime, it relates to conduct that is not criminal, and it is not related to future criminality.  (*People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*).)  We conclude that the probation term is valid.

"In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1.  [Citations.]  'The court may impose and require . . . [such] reasonable conditions[] as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer.'  [Citation.]"  (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120-1121 (*Carbajal*).)  "If a defendant believes the conditions of probation are more onerous than the potential sentence, he or she may refuse probation and choose to serve the sentence.  [Citations.]"  (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*).) We review conditions of probation for abuse of discretion.  (*Carbajal*, at p. 1121.) Generally, "[a] condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . .'  [Citation.]"  (*Lent*, *supra*, 15 Cal.3d at p. 486.)  This test is conjunctive, meaning that all three prongs must be satisfied before a reviewing court will invalidate a probation term.  (*Id*. at p. 486, fn. 1.)  "As such, even if a condition

12

of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality.  [Citation.]"  (*Olguin*, at pp. 379-380.)

Here, defendant pled guilty to a violation of Penal Code section 186.22, subdivision (a), which states that "[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in . . . a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished . . . ."  He also pled guilty to possession of a controlled substance with a firearm and carrying a loaded firearm while being an active participant in a street gang.  The probation report noted that defendant got the firearm from a family member who was a member of the Pomona Cherryville gang.  Although defendant denied being an actual member of the Cherryville gang, he pled guilty to the gang charges.  He told the arresting officer that it benefitted both him and the gang to possess the firearm.  Defendant further stated that his father and other members of his family were gang members, that they were well-known and respected in the gang, and that he had hung out with gang members since he was approximately 13 years old.  Imposition of the curfew condition is reasonably related to future criminality, since it may assist defendant in disassociating himself from gang-related activities.  (See *In re Laylah K.* (1991) 229 Cal.App.3d 1496, 1502.)  We are mindful that *Laylah K.* involves a minor offender, not an adult offender.  The decision in that case was based on a statute,

13

Welfare and Institutions Code section 729.2, which does not apply to defendant. (*Laylah K*, at p. 1502; Welf. & Inst. Code, § 729.2.) However, defendant's conduct and history indicate that the structure and discipline created by the curfew condition will help to prevent him from associating with gang members at night, when he could more easily avoid detection. Therefore, the condition is reasonably designed to curb his future criminal behavior. The curfew will also aid defendant's rehabilitation by making it easier for his probation officer to monitor his whereabouts and, consequently, his compliance with other conditions of his probation.

We conclude that the inclusion of the curfew condition is valid. It promotes section 1203.1's goals of rehabilitation and public safety, as it is reasonably related to the supervision of defendant and his future criminality. (See *Olguin*, *supra*, 45 Cal.4th at p. 380; *Carbajal*, *supra,* 10 Cal.4th at p. 1120-1121.)

<u>DISPOSITION</u>

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST _____
J.

We concur:

RAMIREZ _____
P. J.

McKINSTER _____
J.

14